**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3454-23

IN THE MATTER OF THE
ESTATE OF AGUEDA
MEDEIROS MESCE, deceased.

_____

Argued January 30, 2025 — Decided March 21, 2025

Before Judges Natali, Walcott-Henderson and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. P-000176-23.

Geoffrey D. Mueller argued the cause for appellants (Law Offices of Geoffrey D. Mueller, LLC, attorneys; Geoffrey D. Mueller, of counsel and on the briefs; Peter E. Mueller, on the briefs).

John M. Loalbo argued the cause for respondents (Schumann Hanlon Margulies, LLC, attorneys; John M. Loalbo, of counsel and on the brief).

PER CURIAM

Appellants Frank Cicerale and Vally Cicerale (beneficiaries of the Estate in the underlying matter) appeal from a May 31, 2024 order granting

respondents' motion to disqualify Geoffrey D. Mueller and the Law Offices of Geoffrey D. Mueller (collectively Mueller) as counsel for appellants. Respondents argue Mueller has an irreconcilable conflict of interest arising from his prior consultation with them in the same estate matter during which respondents, Janis Knoll and Joseph Karn, shared confidential information, including settlement positions, but ultimately decided not to retain him. Months after respondents met with Mueller, appellants retained Mueller to handle their interests in the same estate matter. For the reasons that follow, we vacate the May 31 order and remand.

I.

This case involves a dispute over the admission to probate of an October 2022 will of Agueda Medeiros Mesce (decedent). Respondents and appellants are potential beneficiaries of decedent's estate. Because the parties substantially agree on the relevant facts, we highlight only those pertinent to our decision on the disqualification motion. The question presently before us is whether the court erred in granting respondents' motion to disqualify Mueller based on his prior consultation with two respondents in the underlying estate matter.

Decedent died on March 2, 2023. Prior to her death, she executed at least three wills dated: October 2022, January 2022, and August 2018. In both the

January 2022 and October 2022 wills, appellants are to receive fifty percent of the residuary estate. Respondents, family members, were named beneficiaries under the August 2018 will.

Appellants submitted to probate decedent's October 2022 will, which left nearly decedent's entire estate, valued in excess of $4,000,000, to appellants. Respondents filed an order to show cause and complaint seeking to invalidate the October 2022 will in favor of the August 2018 will, alleging claims of undue influence against appellants.

Before filing their complaint, two respondents, Knoll and Karn, consulted with Mueller on July 28, 2023. According to Knoll and Karn, they shared the substance of their claims against appellants with Mueller and discussed potential settlement options. Respondents ultimately decided not to retain Mueller and hired another attorney to file their complaint.

Thereafter, appellants retained Mueller, without the consent of respondents, to represent them in this same estate matter. Respondents moved to disqualify Mueller as counsel for appellants. In the motion, respondents alleged Mueller has an "irreconcilable conflict of interest" because Knoll and Karn had consulted with him months before he was retained by appellants. More particularly, respondents aver the consultation with Mueller "included the

A-3454-23

sharing of highly prejudicial confidential and harmful information, including their assessment of the [d]ecedent's estate, their understanding of the [d]ecedent's testamentary intentions, the relative strengths and weaknesses of their case, and specific potential settlement posture."

With the motion, respondents provided a certification prepared by Knoll (the Knoll certification), to the court for in camera review. Respondents argued the Knoll certification was "unequivocal in providing the specifics of [p]etitioners' settlement position and what [r]espondents should or should not receive from the Estate." Respondents did not provide a copy of the Knoll certification to appellants. Respondents also relied on email communications with Mueller that likewise were not provided to, or identified for, appellants.

Appellants opposed respondents' disqualification motion raising among other points, that they had not been provided with a copy of the Knoll certification or the emails, and the certification had not been submitted properly for in camera review under Rule 4:10-2(e). At the motion hearing, appellants argued:

> In[]camera review, as the [c]ourt is aware, is not just simply, "I'm going to send this to the [c]ourt and nobody can see.["] There's rules that govern this, Rule 4:10-2(e), "[t]he party seeking in[]camera review must describe the nature of the documents, communications, or things not produced or disclosed in a manner that

without revealing . . . [privileged] or protected information that enables other parties to assess the applicability of the privilege or protection." We didn't receive anything like that, Judge.

Respondents asserted appellants were provided with the general contents of the Knoll certification and had sufficient information to prepare a response to the motion.

The court issued a written statement of reasons and an order disqualifying Mueller and his law firm from representing appellants. Applying the Greebel v. Lensak, 467 N.J. Super. 251, 257-58 (2021), two-factor test—"(1) the information disclosed in the consultation must be the same or substantially related to the present lawsuit[;] and (2) the disclosed information must be significantly harmful to the former client in the present lawsuit"—the court found, as to the first factor, the information disclosed in Knoll's consultation with Mueller is the same as in the present lawsuit.

Addressing the second factor—potential harmfulness—the court found "the information would be significantly harmful to respondents in the instant litigation." The court explained:

> Based on the email exchange between [p]etitioners and [c]ounsel prior to the matter being initiated, there is evidence to indicate that [c]ounsel and [p]etitioners had communications involving [p]etitioners' potential claims which also involved [p]etitioners providing to

5

[c]ounsel documents regarding their claims. In one of the emails [c]ounsel informed [p]etitioners that "to the extent there are non-probate assets . . . there is a strong argument the [four-]month window does not apply." Counsel also indicated that he and [p]etitioners had a telephone conversation regarding "a potential claim from California." The [c]ourt finds that based on [the evidence], the information provided to [c]ounsel by [p]etitioners may be prejudicial to [p]etitioners in the matter. Therefore, the [c]ourt finds that [Model Rules of Professional Conduct (RPC)] 1.18 applies to justify the removal of [r]espondent's counsel pursuant.

The court concluded by noting it "did not rely on the disputed [c]ertification of [Knoll] but rather the email communications between [p]etitioner and [Mueller]."

On June 20, 2024, we granted appellants' motion for leave to appeal from the court's order disqualifying Mueller from representing them. Before us, appellants maintain there were no substantive discussions that would create a conflict of interest and the court's decision to discharge Mueller lacked any factual or legal basis under RPC 1.18.

## II.

The determination of whether counsel should be disqualified is subject to de novo review. City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010). Where the trial court conducts an evidentiary hearing, we defer to its findings of fact that are supported by substantial credible evidence, State v. Pierre, 223 N.J. 560,

6

576 (2015), but "for mixed questions of law and fact, we give deference . . . to the supported factual findings of the trial court" and "review de novo" the court's "application of any legal rules to such factual findings[,]" State v. Harris, 181 N.J. 391, 416 (2004).

A lawyer may be precluded from "representation of a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the information acquired from the former prospective client could be significantly harmful to that person in the matter." Greebel, 467 N.J. Super. at 257 (quoting Michels, New Jersey Attorney Ethics: The Law of New Jersey Lawyering § 21:2-3 at 512-13 (2011)); see also RPC 1.18(b). The rule provides:

> (a) A lawyer who has had communications in consultation with a prospective client shall not use or reveal information acquired in the consultation, even when no client-lawyer relationship ensues, except as RPC 1.9 would permit in respect of information of a former client.
>
> (b) A lawyer subject to paragraph (a) shall not represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (c).
>
> (c) If a lawyer is disqualified from representation under

A-3454-23

(b), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except that representation is permissible if (1) both the affected client and the former prospective client have given informed consent, confirmed in writing, or (2) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom and written notice is promptly given to the former prospective client.

(d)  A person who communicates with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a "prospective client," and if no client-lawyer relationship is formed, is a "former prospective client."

[RPC 1.18.]

RPC 1.18 "protects parties," such as respondents here, "who have disclosed information to counsel during a preliminary discussion, without requiring a court to strain to find that the preliminary discussion created a representation." O Builders & Assocs., Inc. v. Yuna Corp. of N.J., 206 N.J. 109,  122 (2011).

To justify disqualification under RPC 1.18(b), (1) the consultation with the former perspective client must have been in the same or a substantially related matter, "and (2) the disclosed information must be significantly harmful to the former [prospective] client in the present lawsuit."  See Greebel, 467 N.J. Super. at 257-58 (citing O Builders, 206 N.J. at 113-14).

In Greebel, we concluded the plaintiff had disclosed to the attorney

"significantly harmful information substantially related to this litigation." Id. at 258. There, plaintiff had disclosed facts concerning "views and concerns about the parties' relationship, financial arrangements, lifestyles, assets, and income." Ibid.

Generally, disqualification is a "harsh discretionary remedy which must be used sparingly." Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 572 (App. Div. 2000). "In evaluating motions for the disqualification of counsel for an adversary pursuant to this RPC," courts must "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose [their] counsel." Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 273-74 (2012) (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)). In doing so, the court must undertake a "painstaking analysis of the facts." Dental Health Assocs. S. Jersey, P.A. v. RRI Gibbsboro, LLC, 471 N.J. Super. 184, 192 (App. Div. 2022) (quoting Dewey, 109 N.J. at 205).

"[T]o strike that balance fairly, courts are required to recognize and to consider that 'a person's right to retain counsel of [their] choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Twenty-First Century Rail Corp., 210 N.J. at 274

(quoting <u>Dewey</u>, 109 N.J. at 218). "Only in extraordinary cases should a client's right to counsel of [their] choice outweigh the need to maintain the highest standards of the profession." <u>Dewey</u>, 109 N.J. at 220.

Here, it is undisputed Mueller consulted with Knoll and Karn in connection with the same matter and Mueller now represents appellants adverse to his former perspective clients. The only question is whether Knoll and Karn disclosed to Mueller "information . . . that could be significantly harmful to [them] in the matter." <u>See</u> RPC 1.18(b).

The court, however, did not conduct the fact-sensitive analysis as required by <u>Dental Health</u>. 471 N.J. Super. at 192; <u>see also</u> <u>O Builders</u>, 206 N.J. at 126 (explaining the determination of whether information disclosed by a former prospective client is substantially harmful "is exquisitely fact-sensitive and -specific"). First, it is unclear on what basis the court declined to consider the Knoll certification. Without that certification, nothing in the motion record contained confidential information purportedly disclosed to Mueller which would have been substantially harmful to respondents' case. Indeed, the emails the court stated it relied upon do not contain anything about respondents' settlement strategies and only implicitly reference the statute of limitations

issue. Thus, those emails, standing alone, are insufficient for respondents to have satisfied their burden of proof in support of their disqualification motion.

Second, while the court initially expressed in its written statement of reasons it found "that the disclosed information would be significantly harmful to [p]etitioners in the instant litigation," it further explained "the information provided to [Mueller] by [p]etitioners may be prejudicial to [p]etitioners in the matter." As the Court explained in O Builders, "in order for information to be deemed 'significantly harmful' . . . , disclosure of that information cannot be simply detrimental in general to the former prospective client, but the harm suffered must be prejudicial in fact to the former prospective client . . . ." 206 N.J. at 126.

Beyond describing the exchange of non-confidential documents between respondents and Mueller, Mueller's advice to Knoll that the four-month statute of limitations may not apply to non-probate assets, and Mueller's "indicat[ion] that he and [p]etitioners had a telephone conversation regarding 'a potential claim from California,'" the court did not explain how any of this information "may be prejudicial," let alone substantially harmful to respondents cause of action. A more thorough analysis of the facts was required. See ibid.

11

Finally, with respect to the Knoll certification, on remand the court should follow the procedures outlined in O Builders by either issuing a protective order or implementing an appropriate screening device. Id. at 129. For the aforementioned reasons, we vacate the disqualification order and remand for further proceedings consistent with this opinion.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3454-23